**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JASON DEMETRIUS STEPHENS,

      Petitioner,

vs.                                                    Case No. 3:08-cv-260-J-32JRK

WALTER A. MCNEIL,
etc.; et al.,

      Respondents.

_____

## ORDER

### I. Status

Petitioner Jason Demetrius Stephens is a death-sentenced inmate of the Florida

penal system who is represented by counsel.  He is proceeding in this action on a Petition

(Doc. #1) for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 and Petitioner's

Memorandum of Law in Support of Habeas Corpus Petition (Doc. #2) (hereinafter

Petitioner's Memorandum).  Petitioner challenges his state court (Duval County) judgment

of conviction for one count of first degree murder, one count of kidnapping, four counts of

armed robbery, two counts of attempted armed robbery, one count of burglary and one count

of aggravated battery.

The following grounds are raised in the Petition: (1) the trial court erred in sentencing Petitioner to death because the sentence is not in accord with the holdings in <u>Tison v. Arizona</u>, 481 U.S. 137, 157-58 (1987) (holding that the Eighth Amendment does not prohibit the death penalty as disproportionate in a case where the defendant's participation in a felony that results in a murder is major and whose mental state is one of reckless indifference) and <u>Enmund v. Florida</u>, 458 U.S. 782, 797 (1982) (finding that the Eighth Amendment does not permit imposition of the death penalty on a defendant who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill or intend that the killing take place or that lethal force be employed); (2) Petitioner was denied the effective assistance of counsel at the guilt phase of the trial; (3) Petitioner was denied the effective assistance of counsel at the penalty phase of the trial; (4) Petitioner's defense attorney was operating under a conflict of interest; (5) Petitioner was denied the effective assistance of counsel for counsel's failure to pursue a motion requesting a jury interview or a new trial; (6) the trial court committed fundamental error by instructing the jury regarding aggravating factors which did not apply, and defense counsel was ineffective for failing to object and for conceding these factors to the jury; (7) the execution of Petitioner would constitute cruel and unusual punishment because he has brain damage and is mentally impaired; (8) the trial court violated Petitioner's constitutional rights by finding the "in the course of a felony" aggravating factor because it constitutes an automatic aggravating factor in a case involving felony-murder, and appellate counsel was ineffective for failing to raise this issue on direct appeal; (9) the trial court committed fundamental error by instructing the jury regarding the heinous, atrocious and cruel

(hereinafter HAC) aggravating factor, and appellate counsel was ineffective for failing to raise this issue on direct appeal;  and (10) the trial court committed fundamental error by instructing the jury regarding the pecuniary gain aggravating factor, and appellate counsel was ineffective for failing to raise this issue on direct appeal.

Respondents have responded to the Petition. See Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted (Doc. #13) (hereinafter Response).[1] Petitioner's Reply to Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted (Doc. #15) (hereinafter Reply) was filed thereafter.  This case is ripe for review.

## II. Procedural History

The Florida Supreme Court summarized the evidence presented at Petitioner's trial and the trial proceedings as follows:

> Stephens was charged with one count of first-degree murder, one count of armed kidnapping, six counts of armed robbery, two counts of attempted armed robbery, one count of burglary, and one count of aggravated battery.  He pled guilty to the armed kidnapping of Robert Sparrow, III, armed robbery of Robert Sparrow, Jr., armed robbery of Derrick Dixon, armed robbery of Roderic Gardner, attempted robbery of Tammy Cobb, attempted robbery of David Cobb, armed burglary and aggravated battery.  The jury found Stephens guilty of the first-degree murder of Robert Sparrow, III and armed robbery of Kahari Graham. . . .

_____

[1] Respondents submitted seven volumes of exhibits in support of the Response.  The Court will refer to these volumes as "Vol."  Respondents tabbed several portions of these volumes (Tab A through Tab LL).  The Court will cite the Volume number, followed by the letter of the relevant Tab, if applicable, followed by the relevant page number(s).  The Court will cite the page number at the bottom of the page, if applicable.  Otherwise, the Court will cite the page number on the top right corner of the page.

The overwhelming evidence of guilt in this case shows Stephens broke into Robert Sparrow, Jr.'s house on June 2, 1997, at approximately 2 p.m., while a number of people were present.  He robbed the people there and kidnapped a child.  There were three or four other people with Stephens at the time he committed these crimes.  However, Stephens refused to cooperate with the authorities in their efforts to identify the other individuals.   One of the individuals, Horace Cummings (Cummings), turned himself into the police and was tried with Stephens.  The other two individuals were never apprehended.  Stephens testified at trial that Cummings and the other unidentified individuals went to the house to buy drugs and were unaware of his plan to rob the occupants.

There were eight eyewitnesses in the house who testified at trial.  While some of the details of the eyewitness' accounts varied, they all substantially agreed with the following summary of events.  Stephens entered the house first, carrying a nine millimeter automatic gun.  He was standing next to Robert Sparrow, III (Sparrow III), who was three years and four months old.  Upon seeing the gun, the child's mother, Consuelo Brown, physically confronted Stephens.  Stephens hit her with the gun on the bridge of her nose.  Ms. Brown fell to the ground and her nose began to bleed.  Stephens ejected a bullet onto the floor and informed the occupants that the gun was loaded.  He told them that he wanted "money and weed."  He demanded from Robert Sparrow, Jr. (Sparrow Jr.) the keys to a blue car located outside the house.  Sparrow Jr. told Stephens the keys were with someone who was not present at the house.

Thereafter, two other individuals entered the house.  One of the individuals was Cummings, but the other individual was never identified.  Stephens made all the occupants lie down on the floor as he searched their pockets for valuables.  The unidentified individual, referred to as Plats or Dreds because of the way he wore his hair, held the occupants of the house on the floor at gunpoint while Stephens located a secured room where he could put them.  There was some testimony that Sparrow III said he was being choked, but it was unclear from the record who was choking him.  After inspecting the house, Stephens determined the bathroom was the most secure location to put his hostages, and he ordered six of them, including six-year-old

Kahari Graham, to crawl to the bathroom. Sparrow III was kept separate from the others.

Many of the eyewitnesses testified that Stephens showed his ID and said he was taking Sparrow III with him as insurance. Sparrow Jr. testified Stephens agreed he would leave the child at the corner if he was not followed.  Stephens also testified he agreed to leave the child somewhere, but he did not know what location the child's father had referred to in his testimony.

After the occupants had been secured in the bathroom, Sparrow Jr.'s half-brother, David Cobb (Cobb), and his friend, Roderick Gardner (Gardner), arrived at the house. Upon entry, they too were robbed and forced to crawl to the bathroom.  One of the items Stephens took from Gardner was his car keys. Gardner was driving his mother's dark green Kia, which had roll-down windows and pull-up locks.  There was testimony that Sparrow III had ridden in the Kia the day before he was killed. On that day, he had been scolded for rolling down the windows and trying to open the car door while it was moving.  The record did not reflect that Stephens had any way of knowing whether the child was capable of rolling down the windows or opening the car door.

When Stephens exited the house with the child, the other individuals who Stephens testified had only gone to the house to buy drugs, were seated in the black car they had driven to the scene.  Stephens testified the other individuals waved him away from the black car because he had the child.  Stephens then ordered the boy to get into the Kia.  Both cars pulled away from the house, with the Kia following the black car.  After driving eight tenths of a mile, both cars pulled over in a residential neighborhood.  It was approximately 2:30 p.m.  The Kia was parked on the side of the street without the benefit of any shade. The outside temperature was approximately 82 degrees and sunny.  The windows in the car were rolled up and all of the doors were closed.  At 9:25 p.m., the dark green Kia was found. Sparrow III was dead, his body lying face down in the passenger's seat with his feet angled toward the steering wheel. The State argued Stephens suffocated Sparrow III before

5

leaving the car.  Stephens testified the boy was alive when he left him in the car.[2]

The medical examiner, Bonifacio Floro, M.D., testified that in his expert medical opinion Robert Sparrow, III had probably died of asphyxiation.  However, he could not conclusively rule out hyperthermia as the cause of death.  He primarily relied upon multiple "petechiae"[3] in the face and eye lining as an indication of asphyxiation.  He also noted there was a small four-millimeter scratch on the back of the child's neck. Dr. Floro concluded this scratch was probably caused by a fingernail. Dr. Floro testified the child's lower lip was bruised, indicating he had been suffocated.   Dr. Floro also relied upon the lack of fingerprints or other evidence showing the child tried to roll down the window or open the door in concluding it was more likely that Sparrow III died from asphyxiation than hyperthermia.

---

[2] Petitioner testified that Sparrow III was seated in the passenger seat when Petitioner left him in the car. Vol. 5, Tab E at 1525. He further testified that at the time he parked the car, he thought someone from the Sparrow household would be chasing after him. Id. Mr. Nichols asked Petitioner, "Did you do anything to talk to him about staying there, about locking the car, about doing anything to secure it, or did you just figure people were going to be right behind you anyway?" Id.  Petitioner replied, "I figured they was coming right behind me." Id. Petitioner denied injuring or harming Sparrow III. Id. at 1529. He testified that he "tried to make [the car] easy to find by parking it in front of somebody's house." Id. Mr. Nichols asked Petitioner, "Did you ever do anything deliberately to try to injure this child other than your taking him from his parents?" Id. at 1529-30.  Petitioner replied, "No." Id. at 1530.

[3] As noted by the Florida Supreme Court:

Petechiae are hemorrhages of the small veins caused by lack of oxygen.  When found on the face and in the eyes, they are typically a sign of suffocation or strangulation. However, this is nonspecific evidence because petechiae may also be caused by laying a body face down after death.  Once the heart stops beating, the blood settles in the lowest part of the body.  If the face is the lowest part of the body, as in this case, blood settles in the face potentially resulting in petechiae of the face and eye lining.

Stephens v. State, 787 So.2d 747, 752 n.3 (Fla. 2001) (per curiam).

Steven Frank Dunton, M.D., testified on the defendant's behalf. After reviewing Dr. Floro's report, he concluded Sparrow III died from hyperthermia. Dr. Dunton relied upon the fact that there were very few signs of asphyxiation. However, he did admit asphyxiation can never be conclusively ruled out because it can leave no signs at autopsy. Dr. Dunton admitted hyperthermia by itself should not cause petechiae, whereas asphyxiation could. However, he went on to explain that gravity will pull the blood down to the lowest point of the body when the heart stops pumping, causing the blood to pool to such a degree that venules rupture resulting in petechiae. He attributed the discoloration of the child's lips to the tissues drying out after death. Therefore, he concluded Dr. Floro erred in relying on the petechiae to diagnose the child's death as being caused by asphyxiation.

Based upon these facts the jury concluded Stephens was guilty of first-degree murder. The verdict form did not delineate between first-degree premeditated murder and first-degree felony murder.

During the penalty phase the state offered victim impact testimony and evidence of a prior violent felony against a sixteen-year-old girl. Stephens offered mitigating testimony that he was good with children, had been raised in a good Catholic family, had an ability to work with his hands to build things, had been deeply effected by his father's death, was remorseful for Sparrow III's death, and was religious.[4] The jury recommended death by a nine to three vote. The trial court followed the jury's recommendation and sentenced the defendant to death for the

---

[4] After the evidence was presented at the penalty phase, the trial court instructed the jury on the following aggravating circumstances: (1) the defendant had been previously convicted of a felony involving the use of threat of violence to some person; (2) the murder was committed while the defendant was engaged in the commission of or flight after committing the crimes of armed kidnapping, armed robbery and burglary with an assault; (3) the crime was committed for financial gain; (4) the crime was especially heinous, atrocious or cruel; and (5) the victim was a person less than twelve years of age. The judge did not instruct the jury on any statutory mitigating circumstances; however, the judge instructed that the jurors may consider any aspect of the defendant's character, record or background and any other circumstances of the offense. See Vol. 2, Tab P.

first-degree murder charge.[5] Stephens was also sentenced to life imprisonment for armed kidnapping with the sentence to run consecutive to the murder sentence. He was sentenced to concurrent life terms for the six armed robberies with these sentences to run consecutive to the murder and armed kidnapping sentences.

Stephens v. State, 787 So.2d 747, 750-53 (Fla. 2001) (per curiam) (footnotes omitted).

On direct appeal, Petitioner presented the following issues: (1) the trial court erred in denying a motion for judgment of acquittal; (2) the trial court erred in denying a motion for new trial; (3) the trial court erred in denying a motion to withdraw the robbery plea involving the robbery of Derrick Dixon or erred in failing to reduce the charge to attempted armed robbery; (4) the trial court erred in denying Petitioner's special instruction on his theory of defense; (5) the trial court erred in denying Petitioner's motion for a change of venue; (6) the

---

[5] In imposing the death penalty, the trial court found the following aggravating factors:(1) the defendant had been previously convicted of a felony involving the use of threat of violence to some person; (2) the murder was committed while the defendant was engaged in the commission of or flight after committing the crimes of armed kidnapping, armed robbery and burglary with an assault; and (3) the victim was a person less than twelve years of age. The judge found that the "pecuniary gain" and HAC factors were not proven beyond a reasonable doubt, and stated that he was "unable to conclude beyond a reasonable doubt, that the defendant intended to kill the child." Vol. 2, Tab S at 883-84. The trial court found the following nonstatutory mitigating circumstances: (1) the defendant came to the aid of a child being punished at a shopping mall; (2) the defendant volunteered at church-related functions; (3) the defendant was previously employed; (4) the defendant was from a religious and supportive family and was distraught over the loss of his father; (5) the defendant's educational history shows that he is capable of rehabilitation in a prison environment; (6) the defendant likes children and has often done things for children; (7) the defendant was a good student; (8) the defendant has adjusted well while incarcerated; (9) the defendant did not intend to kill the child; (10) the co-defendant received a life sentence; (11) the defendant faces up to life imprisonment on the other offenses; and (12) the defendant pleaded guilty to numerous offenses. See id. at 873-91.

8

trial court erred in failing to conduct a <u>Nelson</u>[6] inquiry ; (7) the trial court erred in allowing the prosecutor to question the Petitioner concerning a statement about the electric chair; (8) the Petitioner's sentence is unlawful under <u>Tison</u> and <u>Enmund</u>; (9) the trial court erred in its assessment of aggravating and mitigating factors; (10) the trial court erred in failing to declare Section 922.10, Florida Statutes (1997), unconstitutional; and (11) the trial court erred in failing to declare Section 921.141, Florida Statutes (1997), unconstitutional.  Vol. 5, Tab U at 1-73.   On March 15, 2001, the Florida Supreme Court affirmed Petitioner's conviction and death sentence.  <u>Stephens v. State</u>, 787 So.2d at 762.   Rehearing was denied on June 4, 2001.

Petitioner filed a petition for writ of certiorari to the United States Supreme Court, presenting the following issue:  whether a sentence of death for the act of having left a child unattended in a car in a residential neighborhood - which led to the child's death from hyperthermia - following the commission of other offenses is disproportionate under the Eighth Amendment.  Vol. 5, Tab X.   The petition for writ of certiorari was denied on November 13, 2001.  <u>Stephens v. Florida</u>, 534 U.S. 1025 (2001); Vol. 5, Tab Z.

On October 23, 2002, Petitioner filed a motion for post-conviction relief pursuant to Fla. R. Crim. P. 3.851 (hereinafter 3.851 motion).  Vol. 6, Tab AA.  He filed an amended 3.851 motion on August 4, 2004, in which he included the ineffective assistance of trial

---

[6] <u>Nelson v. State</u>, 274 So.2d 256, 258 (Fla. 4th DCA 1973) (finding that, where a defendant, prior to trial, requests to discharge his court-appointed counsel, the trial court is required to conduct an inquiry to determine the reason for the request, and if the defendant alleges counsel is incompetent, to determine whether counsel is rendering effective assistance).

counsel claims raised in the Petition before this Court.  Vol. 6, Tab CC.  The circuit court conducted an evidentiary hearing.  Vol. 7, Tab EE.  On October 27, 2004, the circuit court denied the 3.850 motion, as amended.  Vol. 6, Tab FF.

Petitioner appealed the denial of the 3.851 motion to the Florida Supreme Court.  He also filed a petition for writ of habeas corpus in the Florida Supreme Court, in which he raised the same ineffective assistance of appellate counsel claims he raises in the Petition before this Court.  Vol. 7, Tabs GG and JJ.  On November 15, 2007, the Florida Supreme Court affirmed the order denying the 3.851 motion and denied the petition for writ of habeas corpus.  Stephens v. State, 975 So.2d 405 (Fla. 2007) (per curiam); Vol. 7, Tab LL.  Rehearing was denied on February 6, 2008, and the mandate was issued on February 22, 2008.[7]  This action was timely filed in this Court.  See 28 U.S.C. 2244(d)(1).

### III. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted).  "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id.  The pertinent facts of this case, contained in the extensive state court record and the record of the evidentiary hearing on post-conviction motion conducted by the state court, are fully developed in the record before the Court.  Because this Court

---

[7] According to the docket sheet, which is available on the Florida Supreme Court's website, the mandate was issued on February 22, 2008. See http://jweb.flcourts.org/docket.

10

can "adequately assess [Petitioner's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert</u>. <u>denied</u>, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

### IV.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA), this Court's review "is 'greatly circumscribed and highly deferential to the state courts.' <u>Crawford v. Head</u>, 311 F.3d 1288, 1295 (11th Cir. 2002)." <u>Stewart v. Sec'y, Dep't of Corr.</u>, 476 F.3d 1193, 1208 (11th Cir. 2007).

> [Section] 2254(d) allows federal habeas relief for a claim adjudicated on the merits in state court only if the state court adjudication[8] resulted in a decision that was: "(1) . . . contrary to, or involved an unreasonable[9] application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Marquard</u>, 429 F.3d at 1303. The phrase "clearly established Federal law," as used in § 2254(d)(1), encompasses only the holdings, as opposed to the dicta, of the United States Supreme Court as of the time of the relevant state court decision. <u>See</u> <u>Carey v. Musladin</u>, 549 U.S. —, 127 S.Ct. 649, 653, 166 L.Ed.2d 482 (2006) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000)); <u>Osborne v. Terry</u>, 466 F.3d 1298, 1305 (11th Cir. 2006).

_____

[8] "[T]he highest state court decision reaching the merits of a habeas petitioner's claim is the relevant state court decision." <u>Newland v. Hall</u>, 527 F.3d 1162, 1199 (11th Cir. 2008). In this case, the Florida Supreme Court was the highest state court to adjudicate Petitioner's claims on the merits.

[9] "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Schriro v. Landrigan</u>, 550 U.S. at 473 (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 410 (2000)).

Id. at 1208-09.

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' § 2254(e)(1)." Schriro, 550 U.S. at 473-74.  This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

## V. Ineffective Assistance of Counsel

Petitioner raises numerous ineffective assistance of trial and appellate counsel claims.

"To prevail on th[ese] claim[s], [Petitioner] must meet both the deficient performance and prejudice prongs of Strickland." Wong v. Belmontes, 130 S.Ct. 383, 384 (2009) (per curiam) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).

The Eleventh Circuit has captured the essence of an ineffectiveness claim:

> The clearly established federal law for ineffective assistance of counsel claims was set forth by the U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish a claim of ineffective assistance of counsel, first, "the defendant must show that counsel's performance was deficient . . . [which] requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687, 104 S.Ct. at 2064.  Second, the defendant must show that counsel's deficient performance prejudiced him.  Id.  That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient

to undermine confidence in the outcome."[[10]]   Id. at 694, 104
S.Ct. at 2068.

Gaskin v. Sec'y, Dep't of Corr., 494 F.3d 997, 1002 (11th Cir. 2007) (per curiam).  Since both

prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation,

"a court need not address the performance prong if the petitioner cannot meet the prejudice

prong, and vice-versa."   Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010) (citation

omitted).

"In considering claims that counsel was ineffective at the penalty phase of trial, [the

Court must] determine 'whether counsel reasonably investigated possible mitigating factors

and made a reasonable effort to present mitigating evidence to the sentencing court.'"

Stewart, 476 F.3d at 1209 (quoting Henyard v. McDonough, 459 F.3d 1217, 1242 (11th Cir.

2006)); see also Porter v. McCollum, 130 S.Ct. 447, 452 (2009) ("It is unquestioned that

under the prevailing professional norms at the time of Porter's trial, counsel had an

'obligation to conduct a thorough investigation of the defendant's background'") (quoting

Williams v. Taylor, 529 U.S. 362, 396 (2000)).  With respect to the prejudice prong, Petitioner

"must show that but for his counsel's deficiency, there is a reasonable probability he would

have received a different sentence.  To assess that probability, we consider 'the totality of

the available mitigation evidence - both that adduced at trial, and the evidence adduced in

the habeas proceeding' - and 'reweig[h] it against the evidence in aggravation.'"   Porter, 130

_____

[10] "[W]hen a defendant raises the unusual claim that trial counsel, while efficacious in
raising an issue, nonetheless failed to preserve it for appeal, the appropriate prejudice
inquiry asks whether there is a reasonable likelihood of a more favorable outcome on appeal
had the claim been preserved."  Davis v. Sec'y for the Dep't of Corr., 341 F.3d 1310, 1316
(11th Cir. 2003) (per curiam) (citation omitted).

S.Ct. at 453-54 (quoting Williams, 529 U.S. at 397-398); see also Sears v. Upton, 130 S.Ct. 3259, 3267 (2010) (finding that a proper prejudice analysis must take into account the newly uncovered mitigating evidence, along with the mitigation evidence introduced during the defendant's penalty phase trial, to assess whether there is a reasonable probability that the defendant "would have received a different sentence after a constitutionally sufficient mitigation investigation") (citations omitted).

"A [petitioner] can establish ineffective assistance of appellate counsel by showing: (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal." Shere v. Sec'y, Dep't of Corr., 537 F.3d 1304, 1310 (11th Cir. 2008) (citations omitted).

> The Supreme Court has held a criminal defendant's appellate counsel is not required to raise all nonfrivolous issues on appeal. Jones v. Barnes, 463 U.S. 745, 751-54, 103 S.Ct. 3308, 3312-14, 77 L.Ed.2d 987 (1983). In so holding, the Court noted, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Id. at 751-52, 103 S.Ct. at 3313. Therefore, it is difficult for a defendant to show his counsel was ineffective for failing to raise certain issues on appeal, particularly if counsel did present other strong issues. Smith v. Robbins, 528 U.S. 259, 287-88, 120 S.Ct. 746, 765-66, 145 L.Ed.2d 756 (2000).

Payne v. United States, 566 F.3d 1276, 1277 (11th Cir. 2009) (per curiam).

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> The question "is not whether a federal court believes the state court's determination" under the Strickland standard "was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro, supra, at 473, 127 S.Ct. 1933. And, because the Strickland standard is a general

14

> standard, a state court has even more latitude to reasonably
> determine that a defendant has not satisfied that standard. <u>See</u>
> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158
> L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was
> unreasonable requires considering the rule's specificity. The
> more general the rule, the more leeway courts have in reaching
> outcomes in case-by-case determinations").

<u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411, 1420 (2009).  Thus, "it is important to keep in mind

that '[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the

AEDPA adds another layer of deference--this one to a [S]tate court's decision--when we are

considering whether to grant federal habeas relief from a [S]tate court's decision.'" <u>Williams</u>

<u>v. Allen</u>, 598 F.3d 778, 789 (11th Cir. 2010) (alteration in original) (quoting <u>Rutherford v.</u>

<u>Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004)).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

Petitioner asserts that the trial court erred in sentencing Petitioner to death because

the sentence is not in accord with the holdings in <u>Tison</u> and <u>Enmund</u>.  Petition at 6-7;

Petitioner's Memorandum at 12-20.  As noted previously, Petitioner raised this issue on

direct appeal, and the Florida Supreme Court adjudicated the claim as follows:

> Stephens, citing to <u>Tison v. Arizona</u>, 481 U.S. 137, 107
> S.Ct. 1676, 95 L.Ed.2d 127 (1987), and <u>Enmund v. Florida</u>, 458
> U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), also argues
> the trial court erred in allowing the jury to consider death as a
> potential sentence because his state of mind did not amount to
> a reckless indifference to human life.[11]  Thus, he argues his

---

[11] This Court notes that, in the advisory sentence, the jury unanimously found that
Petitioner "killed the victim, or attempted to kill the victim, or intended that the victim be killed
or that he played a significant role in the underlying felony and acted with reckless

sentence of death is disproportionate to the crime he committed. We disagree.

The United States Supreme Court and this Court have consistently held that a sentence of death must be proportional to the defendant's culpability. Thus, in Enmund the Court indicated that in the felony murder context a sentence of death was not permissible if the defendant only aids and abets a felony during the course of which a murder is committed by another and defendant himself did not kill, attempt to kill, or intend that a killing take place or that lethal force be used. Later, in Tison the Court said a sentence of death in the felony murder context can be proportional if the defendant is a major participant in the felony and the defendant's state of mind amounts to a reckless indifference to human life.

In the present case, Stephens was not merely an aider or abetter in a felony where a murder was committed by others; Stephens personally committed the crimes of burglary and robbery. He then personally kidnapped the child victim and drove him to a location that was unknown to his parents. Stephens and Stephens alone stole the CD player out of the car and left the three-year old child in the hot, closed car. This record demonstrates that Stephens was indifferent to the fate of this helpless child. Under these circumstances the death penalty is proportional. See Van Poyck v. State, 564 So.2d 1066, 1070 (Fla. 1990) (finding the death sentence proportional where the defendant was the instigator and major participant in the underlying crimes who came to the scene "armed to the teeth" and knew lethal force could be used).

Additionally, we find that the sentence of death in this case is proportional to other felony murder cases where we have upheld the death sentence. While this case presents some

---

indifference to human life." Vol. 1, Tab K at 335; Vol. 2, Tab P at 792, 798. The day after the jury gave its advisory sentence, a newspaper article was published, in which the jury foreman stated that the jury did not believe the Petitioner intended to kill the child. See Vol. 1, Tab K at 365. The trial court ultimately was "unable to conclude beyond a reasonable doubt, that the defendant intended to kill the child." Vol. 2, Tab S at 883-84. However, in imposing the death penalty, the court found that the Petitioner acted with "reckless indifference to human life." Id. at 880-81. See also Vol. 1, Tab S at 387-89.

unique circumstances that have not been encountered before, we have affirmed the imposition of a death sentence in the felony murder context with identical aggravating circumstances and similar types of mitigating evidence. Recently, in <u>Lukehart v. State</u>, 776 So.2d 906, 925 (Fla. 2000), we affirmed a death sentence for a murder committed during the perpetration of aggravated child abuse. Three aggravating circumstances were found: (1) the murder was committed during the commission of a felony; (2) the defendant had a conviction of a prior violent felony; and (3) the victim was under the age of twelve.  In addition, a number of mitigating factors were found, including the two statutory mitigating factors of age (the defendant was twenty-two) and defendant's substantially impaired capacity to appreciate the criminality of his conduct or conform his conduct to the requirements of law.  Some weight was given to the four nonstatutory mitigating factors that Lukehart abused drugs and alcohol; his father was an alcoholic and abusive; he was sexually abused as a child; and he was employed.  The same three aggravating circumstances are present in this case.  And while there are no statutory mitigating circumstances in Stephens' case, nonstatutory mitigating circumstances relating to the defendant's childhood, personal life, and employment were found.

Moreover, like Lukehart, Stephens' prior violent felony was given great weight and is similar to the events which led to the present murder.  In 1992 Stephens and two companions entered the home of LaTonya Jackson, a sixteen-year-old, while she was with her boyfriend.  Stephens had a sawed-off shotgun which he placed against Ms. Jackson's head and threatened to kill her.  This is the same type of home invasion which culminated in the death of Sparrow III, and these events occurred within five years of the prior case.

The defendant argues this case is analogous to the situations this court addressed in <u>Benedith v. State</u>, 717 So.2d 472 (Fla. 1998), and <u>Jackson v. State</u>, 575 So.2d 181 (Fla. 1991).  We disagree.  In both <u>Benedith</u> and <u>Jackson</u> the death penalties were found disproportionate because the defendant's state of mind did not meet the criteria discussed in <u>Enmund</u> and <u>Tison</u>.  More specially, there was no evidence that the defendants either did the shooting, possessed or carried a weapon, or intended harm to any person.  In contrast, Stephens

> personally abducted Sparrow III and left this three-year old child in a hot car to bake to death.
>
> Under the facts and circumstances of this case, the death penalty is not disproportionate and is based on Stephens' personal culpability for the murder of Sparrow III.

Stephens v. State, 787 So.2d at 759-61.

Because there is a qualifying decision from the Florida Supreme Court, this Court must next consider the "contrary to" and "unreasonable application" components of the statute. "It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide." Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001), cert. denied, 537 U.S. 978 (2002). Upon a thorough review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to the holdings in Tison and Enmund, did not involve an unreasonable application of Tison and Enmund, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.[12] Thus, Petitioner is not entitled to relief on this claim.

_____

[12] In Tison, 481 U.S. at 158 (footnote omitted), the Supreme Court held "that major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the Enmund culpability requirement." Here, both the jury and the trial court found that Petitioner played a significant role in the underlying felony and acted with reckless indifference to human life. Moreover, the Florida Supreme Court reasonably found that Petitioner's leaving the small child he kidnapped in a closed car on a hot day met this reckless indifference standard. An Enmund/Tison finding may be made either at the trial level or at the appellate level. See Cabana v. Bullock, 474 U.S. 376, 387-88 (1986). As noted by the Eleventh Circuit, the Edmund/Tison/Cabana "trilogy of cases directs the federal courts to handle an Enmund claim by reviewing the record of the entire course of State proceedings to determine if a culpability finding has been made at some point." Smith v. Dugger, 840 F.2d 787, 792 (11th Cir. 1988), cert. denied, 494 U.S. 1047 (1990). Here, the record reflects that the requisite culpability finding was made.

However, the Court will grant a certificate of appealability with respect to this ground because this issue is debatable among reasonable jurists for the reasons stated in the dissenting opinion on Petitioner's direct appeal.  See Stephens v. State, 787 So.2d at 762-65 (Anstead, J., concurring in part and dissenting in part, in which Shaw and Pariente, JJ., concur) (noting that "it is undisputed and conceded by all that the defendant did not intend to kill the child, and the death occurred in a manner we have consistently treated as a lesser degree of homicide and certainly not deserving of the death penalty.  Hence, we have gone far astray from the United States Supreme Court's strict limitations in Enmund/Tison").

## B. Ground Two

Petitioner contends that he was denied the effective assistance of counsel at the guilt phase of the trial for counsel's: (1) failing to attend depositions, Petition at 9-10; (2) failing to argue motions, id. at 10-13; (3) conceding Petitioner's guilt, id. at 13-15; (4) advising Petitioner to plead guilty to the armed robbery of Derrick Dixon, id. at 15-17; (5) failing to object to the prosecutor's improper statements and actions, id. at 17-19; and (6) delegating the role of attorney for Petitioner to counsel for the co-defendant, Horace Cummings, id. at 19-20.  See also Petitioner's Memorandum at 20-24.  Petitioner raised these issues in his amended 3.851 motion, and the circuit court denied relief.  See Vol. 6, Tab FF 4-8.  Upon Petitioner's appeal, the Florida Supreme Court adjudicated these claims as follows:

Failure to Attend Depositions

Stephens asserts that his lead counsel failed to attend several depositions.  The trial court found that such absence is

presumptively deficient[13], and we agree.  The absence of counsel at discovery depositions in a criminal case where the State is seeking the death penalty is very disturbing.[14] However, Stephens fails to demonstrate how he was prejudiced by counsel's failure to attend these depositions.  Stephens simply contends that counsel failed to attend certain depositions, but does not provide any argument to demonstrate that, but for counsel's failure to attend these depositions, there is a reasonable probability that the outcome of the trial would have been different.  Because Stephens fails to satisfy the prejudice prong of Strickland, we affirm the denial of relief on this claim.

### Failure to Argue Motions

Stephens contends that counsel was ineffective for failing to argue three specific motions: (1) motion for judgment of acquittal; (2) motion for a new trial; and (3) motion for a change of venue.  Stephens fails to meet the Strickland standard because he fails to show that had counsel argued these motions

---

[13] Mr. Richard Nichols, Esquire, and Mr. Refik Eler, Esquire, represented Petitioner at trial.  In addressing this ground, the trial court noted that "Nichols assumed primary responsibility for the guilt phase and Eler assumed primary responsibility for the penalty phase."  Vol. 6, Tab FF at 4.  The court found that "[b]oth had responsibility to make sure that one or the other attended these depositions.  Although transcripts were available of these depositions, the failure to attend is presumptively deficient." Id.  However, the court concluded that Petitioner was not prejudiced by this deficient performance. Id. at 5.

[14] At the time of the evidentiary hearing on the 3.851 motion, Mr. Nichols was deceased.  However, Mr. Eler testified that Mr. Nichols "was lead trial counsel and would be noticed by the P.D.'s office for depositions."  Vol. 7, Tab EE, August 26, 2004 Evidentiary Hearing Transcript at 52.  Mr. Eler testified that he attended depositions if he "wanted to attend for purposes of getting a flavor for the case," id., if he thought the witness was relevant to the penalty phase or if Mr. Nichols requested Mr. Eler to do so.  Mr. Eler was not aware that Mr. Nichols did not attend the depositions. Id.  However, Mr. Eler testified that he "went to a bunch of" the depositions, and he did not think that Mr. Nichols was present at those depositions. Id.  Mr. Alan Chipperfield, Esquire, counsel for Petitioner's co-defendant, testified that he was concerned that Mr. Nichols was not attending the depositions.  Vol. 7, Tab EE, August 25, 2004 Evidentiary Hearing Transcript at 128-29.  Mr. William P. White, Esquire, another attorney for Petitioner's co-defendant, testified that he was so concerned about Mr. Nichols' failure to attend depositions and his inattentiveness at the depositions he did attend that he brought the matter to the attention of the presiding judge. Id. at 138-40.

more vigorously than simply making a bare-bones motion, the trial court would have granted them. We addressed the trial court's denial of all three motions in Stephens' direct appeal and found all three claims to be without merit. With regard to the motion for judgment of acquittal, we found that there was "sufficient evidence to support Stephens' conviction for first-degree felony murder." Stephens, 787 So.2d at 753. With regard to the motion for a new trial, we found that "[t]he manifest weight of the evidence proves, at a minimum, that Stephens committed felony murder." Id. at 754. Finally, with regard to the motion for a change of venue, we held that Stephens "failed to allege facts indicating abnormal pretrial publicity." Id. at 757.

Because we rejected all three claims on the merits in Stephens' direct appeal, Stephens fails to satisfy the Strickland standard for ineffective assistance of counsel. See Melendez v. State, 612 So.2d 1366, 1369 (Fla. 1992) (when this Court has previously rejected the substantive claim on the merits about which the defendant takes issue during postconviction proceedings in the guise of an ineffective assistance of counsel claim, counsel cannot be deemed ineffective for failing to make the meritless argument). Accordingly, the trial court properly denied relief on this claim.[15]

Concession of Guilt

Stephens alleges that counsel was ineffective for pleading him guilty to first-degree murder without his permission by pleading him guilty to the underlying felony of armed kidnapping. The trial court found that it was not a reasonable strategy to plead Stephens guilty to armed kidnapping when Stephens had been charged with felony murder.[16] We agree that counsel was deficient for pleading Stephens guilty to armed kidnapping. However, we also agree with the trial court that Stephens fails to demonstrate that counsel's deficient performance prejudiced

---

[15] The trial court denied relief, finding that "a more forceful argument for a change of venue, judgment of acquittal, or a new trial would not have produced a different outcome." Vol. 6, Tab FF at 6.

[16] See Vol. 6, Tab FF at 14-15.

21

him.   Because Stephens fails to satisfy both prongs of <u>Strickland</u>, we deny relief on this claim.

Stephens fails to demonstrate that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.  <u>See</u> <u>Hill v. Lockhart</u>, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).[17]   To determine whether a reasonable probability exists that Stephens would have insisted on going to trial instead of pleading guilty, we must look at the totality of the circumstances surrounding the plea.   <u>See</u> <u>Grosvenor v. State</u>, 874 So.2d 1176, 1181-82 (Fla. 2004).

Stephens provided no support in his postconviction motion or at the evidentiary hearing to show that, but for counsel's errors, he would have not pled guilty and would have insisted on going to trial.[18]   During the plea colloquy between Stephens and the trial court, Stephens stated that he authorized his counsel to enter the guilty pleas, he understood that by entering the pleas, he was waiving certain constitutional rights, he had enough time to discuss his case and decision to enter guilty pleas with his attorney, and that no one was forcing him to enter the guilty pleas.[19]   In addition, at trial Stephens testified

---

[17] As noted by the Florida Supreme Court, in the context of a guilty plea, Petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."   <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985) (footnote omitted).   Even assuming *arguendo* that the proper prejudice inquiry is whether the outcome of the first degree murder trial would have been different if Petitioner had not pled guilty to the kidnapping charge (the predicate felony for the felony-murder theory), Petitioner has not shown the requisite prejudice because there was overwhelming, uncontroverted evidence that he kidnapped the victim, including Petitioner's own testimony and confession.   <u>See</u> Vol. 5, Tab E at 1518-25, 1554.

[18] Petitioner did not testify at the evidentiary hearing on the 3.851 motion, nor did he offer any proof that he would have insisted on proceeding to trial absent counsel's alleged errors.

[19] <u>See</u> Vol. 2, Tab S, December 8, 1997, Transcript at 3-13, 35-37.   Petitioner also signed a Plea of Guilty form, in which he acknowledged that his plea was free and voluntary, that he had been advised of his rights, and that he had fully discussed all aspects of his case with his attorneys.   Vol. 1, Tab T at 232-34.   Additionally, at the evidentiary hearing on the 3.851 motion, Mr. Eler testified that he was present when Mr. Nichols and the Petitioner discussed the benefit of pleading guilty to the charges Petitioner actually committed in order to build a

and admitted to the kidnapping. Stephens testified that he planned to take Little Rob to ensure he got out of the house safely. He testified that he talked to Little Rob's father about where he was going to leave Little Rob, and that when he left the Sparrow home, he took Little Rob with him.[20]

Accordingly, the trial court properly denied relief on this claim.

### Guilty Plea on Armed Robbery Charge

Stephens asserts that counsel was ineffective for pleading Stephens guilty to the charge of armed robbery of Derrick Dixon, and later failing to file a motion to withdraw the plea.[21] With regard to counsel pleading Stephens guilty, we have already held that Stephens fails to demonstrate that, but for counsel's error, Stephens would not have pled guilty and would have insisted on going to trial. Thus, Stephens fails to meet the prejudice prong of Strickland. With regard to failing to withdraw the plea, at the end of the State's case, counsel did make a motion to withdraw Stephens' guilty plea to the charge of armed robbery and amend the charge to attempted armed robbery. However, the trial court rejected the motion to withdraw because it was not the appropriate time to file such a motion because Stephens was not on trial for this robbery. Stephens, 787 So.2d at 755.[22] Although counsel subsequently failed to file the motion to withdraw the guilty plea, Stephens fails to demonstrate that he was prejudiced. During the defense's case, Stephens admitted to robbing Derrick Dixon. He testified that he

_____

rapport with the jury and establish Petitioner's credibility with respect to his contention that he did not intend to harm the child victim. Vol. 7, Tab EE, August 26, 2004 Evidentiary Hearing Transcript at 43-47. Mr. Eler testified that the Petitioner agreed with this strategy. Id. at 45-46.

[20] See Vol. 5, Tab E at 1518-25.

[21] Petitioner argues that counsel was ineffective for failing to move to withdraw the plea at the appropriate time because Derrick Dixon testified at trial that he was not robbed by Petitioner. See Petition at 15-17.

[22] See Vol. 4, Tab D at 1492-94.

took $20 from Derrick Dixon, and when counsel asked him about Dixon's testimony that Stephens did not take anything from him, Stephens admitted that he did in fact take money from Dixon.[23]

Thus, Stephens fails to demonstrate that there is a reasonable probability that the outcome of the trial would have been different had counsel moved to withdraw the guilty plea to the charge of armed robbery. Accordingly, the trial court properly denied relief on this claim[24].

### Failure to Object

Stephens asserts that counsel was ineffective for failing to object to the prosecutor's comments during both his opening statement and closing argument. Stephens specifically identifies the following comments as being objectionable: (1) during opening statement, the prosecutor repeatedly stated that the child had been "brutally and savagely murdered"[25] adding that the victim's fate was to "slowly fry to death"[26]; (2) during closing argument, the prosecutor opined that Stephens' testimony at trial came from a warped concern for his codefendant and then stated to the jury, "Where was the concern that he showed for a three year old child?  There's the concern,[27]" at which point the prosecutor showed a photo of Little Rob; (3) during closing argument, the prosecutor's statement, "My job is to represent the State of Florida to seek justice.[28]  If the State hasn't proved the defendant's guilt beyond a reasonable doubt, then I am not sure it can be done in any case[29]"; and (4) during closing

---

[23]  See Vol. 5, Tab E at 1527.

[24]  The trial court found counsel's performance was deficient, but that Petitioner was not prejudiced by this deficient performance.  Vol. 6, Tab FF at 6-7.

[25]  See Vol. 4, Tab B at 991.

[26]  See Vol. 4, Tab B at 996.

[27]  See Vol. 5, Tab G at 1820.

[28]  See Vol. 5 Tab G at 1767.

[29]  See Vol. 5 Tab G at 1768.

24

argument, the prosecutor referred to Stephens' testimony as "theatrical, melodramatic, lying" and argued that Stephens had "bragged and lied so much and so often about so many crimes.[30]"

In order to prevail on an ineffective assistance of counsel claim on these grounds, Stephens must first show that the comments were improper or objectionable and that there was no tactical reason for failing to object.  Secondly, Stephens must demonstrate that the comments deprived "the defendant of a fair and impartial trial, materially contribute[d] to the conviction, [were] so harmful or fundamentally tainted as to require a new trial, or [were] so inflammatory that they might have influenced the jury to reach a more severe verdict than that it would have otherwise."  Spencer v. State, 645 So.2d 377, 383 (Fla. 1994). The trial court found that none of the comments was so prejudicial that Stephens was denied a fair trial[31], and we agree. When read in context, these comments were not improper and did not deprive Stephens of a fair trial.

With regard to the two statements made during opening statement, these comments were made in the context of explaining what the prosecutor expected to show through evidence that would be introduced during the trial.   The prosecutor even emphasized that nothing he said during the opening statement was evidence and that the purpose of the opening statement was to give the jury an idea of the evidence that the jury would receive.   We have held that "[o]pening remarks are not evidence, and the purpose of opening argument is to outline what an attorney expects to be established by the evidence." Occhicone v. State, 570 So.2d 902, 904 (Fla. 1990). In such a context, the prosecutor's comments cannot be deemed improper or objectionable.

With regard to the comments made during closing argument, these comments cannot be deemed improper or objectionable when taken in the context of what the evidence established during trial.  The prosecutor was properly reviewing

---

[30] See Vol. 5, Tab G at 1819.

[31] See Vol. 6, Tab FF at 7-8.

what the evidence and testimony revealed at trial and drawing reasonable inferences from such evidence and testimony. See Griffin v. State, 866 So.2d 1, 16 (Fla. 2003) (holding that in closing argument it is proper for the prosecutor "to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence"). Further, we have held that wide latitude in closing argument to a jury is permitted. See Thomas v. State, 326 So.2d 413 (Fla. 1975); see also Spencer v. State, 133 So.2d 729 (Fla. 1961).

The final comment, where the prosecutor described his job, was also proper because this comment was made in response to defense counsel's comment during his closing argument. Defense counsel stated that the prosecutor's job was to prove the case beyond a reasonable doubt and indicated that there was some suspicion as to whether the State had done this. In response, the prosecutor stated that the State had done its job of proving the case beyond a reasonable doubt. Such a comment is not improper. See Walls v. State, 926 So.2d 1156, 1166 (Fla. 2006) (a prosecutor's comments are not improper where they fall into the category of an "invited response" by the preceding argument of defense counsel concerning the same subject).

Because the alleged comments were not improper, Stephens fails to show that he was prejudiced under Strickland. Accordingly, the trial court properly denied relief on this claim.[32]

Delegation of Responsibilities

Stephens alleges that either through neglect or willfulness, counsel essentially delegated the role of attorney for Stephens to counsel for codefendant Cummings. In making this argument, Stephens seems to repeat certain claims of ineffective assistance of counsel, such as the failure to attend depositions and the failure to argue certain pretrial motions. We found that the trial court properly denied relief on these claims.

---

[32] Although the trial court found some of the comments to be objectionable, the court concluded that the comments did not deprive Petitioner of a fair trial or affect the outcome of the trial. Vol. 6, Tab FF at 7-9.

Stephens also alleges that counsel for Cummings conducted the vast majority of cross-examinations, and called the witness most critical to Stephens' defense, Dr. Steven Frank Dunton.  With regard to the alleged failure to cross-examine witnesses, Stephens fails to demonstrate how he was prejudiced by this inaction because he does not point to any questions that counsel should have asked that were not asked by co-counsel. He simply states that counsel failed to cross-examine numerous witnesses and then lists the different witnesses.  Such a bare-bones claim is not enough to demonstrate that Stephens was prejudiced under <u>Strickland</u>.

With regard to Dr. Dunton, the trial court found that counsel was not ineffective because it did not matter which defendant presented Dr. Dunton.[33]  We agree.  Regardless of who called Dr. Dunton, Dr. Dunton's direct examination benefitted both Stephens and Cummings because he rebutted the testimony of the State's medical expert, Dr. Floro, and testified that Little Rob died from hyperthermia, not suffocation or strangulation.   Furthermore, counsel testified at the evidentiary hearing that although Cummings' counsel called Dr. Dunton as a witness, it was Stephens' counsel who suggested they call Dr. Dunton as a medical expert.[34]  He also testified that by not calling Dr. Dunton, Stephens had a significant advantage because it preserved the right to final argument at closing for Stephens.[35]

Accordingly, we affirm the trial court's denial of relief on this claim.

Stephens contends that the lower court erred by evaluating each of the above claims of ineffectiveness separately.   Stephens argues that when the claims are evaluated cumulatively, it is clear that confidence was

---

[33] <u>See</u> Vol. 6, Tab FF at 5-6.

[34] <u>See</u> Vol. 7, Tab EE, August 26, 2004 Evidentiary Hearing Transcript at 53.

[35] <u>See</u> Vol. 7, Tab EE, August 26, 2004 Evidentiary Hearing Transcript at 73-74.

> undermined in the outcome of his trial.[36]  Because Stephens fails to show that any of the alleged errors satisfies the two-prong <u>Strickland</u> standard, there are no errors to consider cumulatively.  <u>Harvey v. State</u>, 946 So.2d 937 (Fla. 2006); <u>see also</u> <u>Downs v. State</u>, 740 So.2d 506 (Fla. 1999) (where allegations of individual error are without merit, a cumulative error argument based thereupon must also fail).  The trial court properly denied relief on this claim.

<u>Stephens v. State</u>, 975 So.2d at 418-22.

Upon a thorough review of the record and the applicable law, this Court concludes that the state court's adjudication of these ineffectiveness claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.[37]  Thus, Petitioner is not entitled to relief on these ineffectiveness claims.

---

[36] Petitioner does not raise a cumulative error claim in his Petition; however, in Petitioner's Memorandum at 24, he alleges the Florida Supreme Court "failed to apply a cumulative analysis to the undeniably deficient performance of trial counsel."  Thus, this Court will assume Petitioner intended to raise his cumulative error claim in the Petition.

[37] Petitioner asserts that the Florida Supreme Court should not have required Petitioner to show that he was prejudiced by counsel's alleged errors and should have instead applied the presumption of prejudice under <u>United States v. Cronic</u>, 466 U.S. 648 (1984), because counsel were laboring under an actual conflict of interest, were constructively or actually absent from critical stages of the proceedings, and entirely failed to subject the prosecution's case to meaningful adversarial testing.  Petitioner's Memorandum at 21-24.  Although this Court agrees that Mr. Nichols' performance in preparing for trial and during the guilt phase of the trial was deficient in many respects, he was not absent from critical stages of the proceedings and did not entirely fail to subject the prosecution's case to meaningful adversarial testing.  Furthermore, counsel were not laboring under a conflict of interest for the reasons stated in the discussion of ground four.  Thus, the Florida Supreme Court properly required Petitioner to demonstrate that he was prejudiced by counsels' alleged errors.

### C. Ground Three

Petitioner contends that he was denied the effective assistance of counsel at the penalty phase of the trial for counsel's: (1) failing to present mitigation, Petition at 21-38; (2) failing to challenge or neutralize the prior felony conviction, id. at 38-43; (3) failing to object to the prosecutor's penalty phase closing argument, id. at 43-45; (4) conceding aggravating factors not found by the trial court, id. at 45-46; and (5) conceding aggravating circumstances through guilty pleas, id. at 46-48.  See also Petitioner's Memorandum at 24-40.  Petitioner raised these issues in his amended 3.851 motion, and the circuit court denied relief.  See Vol. 6, Tab FF at 7-11.  Upon Petitioner's appeal, the Florida Supreme Court adjudicated these claims as follows:

Failure to Present Mitigation

Stephens alleges that his penalty phase counsel provided ineffective assistance by failing to discover and present a wealth of mitigation available due to inadequate investigation.  With respect to the investigation and presentation of mitigation evidence, the United States Supreme Court observed in Wiggins that "Strickland does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing.  Nor does Strickland require defense counsel to present mitigating evidence at sentencing in every case." Wiggins v. Smith, 539 U.S. 510, 533, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).  Rather, in deciding whether trial counsel exercised reasonable professional judgment with regard to the investigation and presentation of mitigation evidence, a reviewing court must focus on whether the investigation resulting in counsel's decision not to introduce certain mitigation evidence was itself reasonable.  Id. at 523, 123 S.Ct. 2527; Strickland, 466 U.S. at 690-691, 104 S.Ct. 2052.  When making this assessment, "a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would

29

lead a reasonable attorney to investigate further." <u>Wiggins</u>, 539 U.S. at 527, 123 S.Ct. 2527.

Counsel testified at the evidentiary hearing that his strategy was to humanize Stephens by calling family and friends to testify that Stephens was a loving person, that he had good relations with children, and that he took care of different children[38]. This strategy was especially important because the case involved the death of a child. Counsel further testified that he was trying to get the jury to hear good things about Stephens in an attempt to get a life sentence. The record demonstrates that counsel did in fact call ten lay witnesses during the penalty phase. All ten witnesses testified that Stephens was a loving, cheerful, and bright person who came from a loving family and who was good with children.[39]

Stephens contends that counsel failed to discover many of the details that established compelling mitigation, such as his drug use, an incident where Stephens started a fire at a neighbor's house, and the accidental shooting of Stephens' brother. However, counsel testified that he did not consider these incidents as mitigation[40] and that such information went against his strategy to portray Stephens as a "good guy."

In denying Stephens' claim of ineffective assistance of counsel, the trial court applied the <u>Strickland</u> standard and concluded that Stephens did not satisfy either prong of <u>Strickland</u>.[41] We agree with the trial court's assessment that counsel's investigation and preparation of mitigating evidence was not deficient. The trial court found that counsel was attempting to paint a "good guy" image of Stephens to the jury to show that Stephens should receive a life sentence, not a death sentence. Counsel made a strategic decision to focus on the humanization of Stephens through lay testimony, and cannot

---

[38] <u>See</u> Vol. 7, Tab EE, August 26, 2004 Evidentiary Hearing Transcript at 64.

[39] <u>See</u> Vol. 2, Tab M.

[40] <u>See</u> Vol. 7, Tab EE, August 26, 2004 Evidentiary Hearing Transcript at 69-70.

[41] <u>See</u> Vol. 6, Tab FF at 17-25.

be deemed ineffective for such action.  See Occhicone v. State, 768 So.2d 1037 (Fla. 2000).

With regard to mental health testimony, Stephens contends that counsel failed to request the assistance of experts to evaluate Stephens for mitigation.  Stephens' claim is not supported by the record.  Counsel testified at the evidentiary hearing that he consulted two experts, Dr. Ernest Miller and Dr. Peter Knox.  He further testified that he did not consult both experts just to know if Stephens was competent to stand trial or if Stephens was insane at the time of the crime, but also to see if they could help determine if there was any mental health mitigation.  Counsel testified that after reviewing the reports of both experts, he believed the experts' conclusions were detrimental to Stephens and that it would not be in Stephens' best interest to present the findings.[42]

Stephens presented the testimony of Dr. Jethrow Toomer at the evidentiary hearing to demonstrate that if counsel had received appropriate assistance from a mental health expert, the expert would have been able to educate the jury as to why Stephens acted as he did.[43]  The trial court found that being able to secure an expert witness to provide an opinion as to mental health mitigation during postconviction proceedings, which arguably could have been helpful to Stephens, does not, in and of itself, render trial counsel's performance ineffective.[44] See Fennie v. State, 855 So.2d 597 (Fla. 2003) (citing Provenzano v. Dugger, 561 So.2d 541 (Fla. 1990)).  The trial court also found that Dr. Toomer's findings could have been harmful because those findings seemed to suggest that the description of Stephens' childhood portrayed through the testimony of witnesses at the penalty phase was false.  As a result, Dr. Toomer's testimony would have contradicted and undermined the "good guy" defense.  We agree with the trial court's assessment that Dr. Toomer's findings would have been damaging to the "good guy" image that counsel was attempting

---

[42] See Vol. 7, Tab EE, August 26, 2004 Evidentiary Hearing Transcript at 67-73.

[43] See Vol. 7, Tab EE, August 25, 2004 Evidentiary Hearing Transcript at 20-110.

[44] See Vol. 6, Tab FF at 23.

31

to portray.   Counsel cannot be deemed ineffective when he made a strategic decision to focus on the positive aspects of Stephens' life instead of seeking a third opinion. Dufour v. State, 905 So.2d 42, 56 (Fla 2005) (finding trial counsel was not ineffective in not seeking a second opinion where the "record clearly reflect[ed] that counsel attempted to secure a mental health expert, had no reason to doubt that expert's negative conclusions, and made an informed decision not to present a mental health expert").

Because focusing on a "good guy" image of Stephens through lay witnesses was a reasonable strategic decision by counsel, his performance was not deficient.[45]  We affirm the trial court's denial of relief on this claim.

Failure to Challenge or Neutralize Prior Violent Felony<br>Conviction

Stephens contends that counsel was ineffective for failing to challenge or neutralize the 1992 burglary conviction that the State introduced as a prior violent felony aggravator.   With regard to the failure to challenge, we agree with the trial court's

---

[45] This is not a case like the recent Supreme Court decisions in Porter and Sears, where defense counsel failed to conduct adequate investigation to uncover potential mitigating evidence.  Here, penalty phase counsel sought the assistance of two mental health experts, and after reviewing the reports of both experts, he believed the experts' conclusions were detrimental and that it would not be in Petitioner's best interest to present their findings at the penalty phase.  Moreover, penalty phase counsel knew of the incident where Petitioner started a fire at a neighbor's house and the accidental shooting of Petitioner's brother; however, he did not think this evidence was mitigating.  Instead, he made a strategic decision to focus on "good guy" mitigating evidence.  The Eleventh Circuit has recognized that such a strategic decision does not constitute deficient performance.  See Haliburton v. Sec'y for Dept. of Corr., 342 F.3d 1233, 1244-45 (11th Cir. 2003) (concluding that counsel's decision to humanize the defendant through lay testimony rather than call a mental health expert who might have hurt the defense was not deficient performance).  Moreover, with respect to Petitioner's drug use, the Eleventh Circuit has "repeatedly recognized that evidence of a defendant's alcohol or drug abuse holds little mitigating value and may have the counterproductive effect of alienating the jury." Stewart v. Sec'y, Dept. of Corr., 476 F.3d 1193, 1217 (11th Cir. 2007) (citations omitted).

finding that Stephens' contention is mistaken.[46]   When the State offered the burglary conviction in aggravation, counsel immediately objected on the record.[47]   Accordingly, counsel cannot be deemed ineffective for failing to object when, in fact, he did object.

With regard to the failure to neutralize the burglary conviction as an aggravator, counsel testified at the evidentiary hearing that he deposed Latonya Jackson[48], the victim of the burglary, and looked at the police reports of the burglary conviction and understood that there was damaging information about it.[49]   Counsel testified that he knew that even if he objected to the introduction of the aggravator, the burglary conviction was nonetheless going to come in.   As a result, counsel made a strategic decision not to focus on introducing evidence to possibly lessen the weight of the aggravator because he believed it could backfire.[50]   Counsel cannot be deemed ineffective for making a strategic decision "if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct."   Brown v. State, 894 So.2d 137, 147 (Fla. 2004).   We affirm the trial court's denial of relief on this claim.

### Failure to Object

Stephens contends that counsel was ineffective for failing to object to some of the prosecutor's comments and photographs displayed during the State's closing argument. Stephens first points to two specific comments that were allegedly improper.   These comments focused on the uniqueness of the victim of the murder, Little Rob, and how his

---

[46] See Vol. 6, Tab FF at 10.

[47] See Vol. 2, Tab L at 1-2.

[48] See Vol. 7, Tab EE, August 26, 2004 Evidentiary Hearing Transcript at 171.

[49] See Vol. 7, Tab EE, August 26, 2004 Evidentiary Hearing Transcript at 129.

[50] See Vol. 7, Tab EE, August 26, 2004 Evidentiary Hearing Transcript at 155-56.

death was a loss to his friends, family, and the community.[51] Counsel testified at the evidentiary hearing that he did not object to such comments because he did not find anything objectionable or improper about these comments.[52] We agree that the prosecutor's comments on victim impact were permissible under section 921.141(7), Florida Statutes (2006). In Bonifay v. State, 680 So.2d 413, 419-20 (Fla. 1996), we held that victim impact comments were proper because

> the boundaries of relevance under [section 921.141(7)] include evidence concerning the impact to family members. Family members are unique to each other by reason of the relationship and the role each has in the family. A loss to the family is a loss to both the community of the family and to the larger community outside the family.

In this case, the prosecutor permissibly commented on the impact Little Rob's death had on his friends and family. Even after making these comments, the prosecutor stated that sympathy for either Stephens' family or Little Rob's family should not be the basis for the jury's verdict. Further, the prosecutor emphasized that the victim impact evidence was not introduced to gain sympathy and that such evidence could not be used either to establish an aggravating circumstance or to make the weight of the aggravating circumstance greater than it was.[53]

Stephens also alleges that certain photographs displayed by the prosecutor were improper and objectionable. These photographs included one that displayed what happened to Little Rob's mother during the crime, another that displayed a picture of Little Rob before the day of the murder, and another that showed Little Rob after his death.[54]

---

[51] See Vol. 2, Tab N at 743-44, 748.

[52] See Vol. 7, Tab EE, August 26, 2004 Evidentiary Hearing Transcript at 56-57.

[53] See Vol. 2, Tab N at 744-45.

[54] See Vol. 2, Tab N at 749.

34

With regard to the photograph of Little Rob before he died, we have held before that the introduction of a photograph of a victim before the victim was murdered is not improper because such evidence can "demonstrate the victim's uniqueness as an individual . . . . While such evidence can have an emotional impact on jurors, the effect is minimized where the photo is a basic portrayal of the victim, presented to the jury in a routine manner." Branch v. State, 685 So.2d 1250, 1253 (Fla. 1996). The other two photographs were relevant to the facts and issues of the case and, as a result, were not improper. During the commission of the crime, Stephens hit Little Rob's mother with the gun on the bridge of her nose and, as a result, she fell to the ground and her nose began to bleed. The photograph showing Little Rob after he died is also relevant because the manner of death was hotly disputed. Furthermore, as we stated in Henderson v. State, 463 So.2d 196, 200 (Fla. 1985), "[t]hose whose work products are murdered human beings should expect to be confronted by photographs of their accomplishments."

Counsel is not ineffective for making a tactical decision not to object to statements and photographs introduced during the State's closing arguments when those statements and photographs were not improper. See Mungin v. State, 932 So.2d 986 (Fla. 2006). We affirm the trial court's denial of relief on this claim[55].

### Concession of Aggravating Factors

Stephens alleges that counsel conceded both the heinous, atrocious, or cruel (HAC) aggravator and the pecuniary gain aggravator to the jury during his closing argument. Stephens is mistaken as counsel did not concede either aggravator. With regard to the pecuniary gain aggravator, counsel explained to the jury that the aggravator should be merged with the murder "in the course of a felony" aggravator. Counsel explained that because Stephens had been convicted of robbery, which was one of the enumerated felonies recognized for the aggravating circumstance of murder "in the

---

[55] The trial court found that Petitioner was not prejudiced by counsel's alleged errors. See Vol. 6, Tab FF at 8-10.

course of a felony," the crime was for financial gain, and as a result, the two aggravators should merge.[56]

With regard to the HAC aggravator, counsel attempted to emphasize to the jury that the State had not proven the aggravator beyond a reasonable doubt. Counsel stated to the jury that they should give very little weight to the HAC aggravator because none of the medical testimonies demonstrated that Little Rob suffered from a prolonged, agonizing kind of death, which is necessary for the HAC aggravator to apply. Counsel also stated that there was no proof of enjoyment of punishment or some kind of pleasure in making Little Rob suffer the way he did.[57]

Because counsel did not concede either aggravator, Stephens fails to demonstrate that counsel was deficient under Strickland. Accordingly, we affirm the denial of relief on this claim.

Concession of Aggravating Circumstances Through Guilty Pleas

Stephens contends that his lead counsel was ineffective for advising Stephens to plead guilty to eight counts of the indictment. Stephens claims that these guilty pleas resulted in a concession to the murder "in the course of a felony" aggravator. The United States Supreme Court in Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), held that when a defendant challenges his guilty pleas based on ineffective assistance of counsel, under the prejudice prong of Strickland, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." We acknowledged this standard in Grosvenor v. State, 874 So.2d 1176, 1181-82 (Fla. 2004), and held that to determine whether a reasonable probability exists that the defendant would have insisted on going to trial, a court should examine

---

56 See Vol. 2, Tab O at 756-57.

57 See Vol. 2, Tab O at 758-61.

> the totality of the circumstances surrounding the plea, including such factors as whether a particular defense was likely to succeed at trial, the colloquy between the defendant and the trial court at the time of the plea, and the difference between the sentence imposed under the plea and the maximum possible sentence the defendant faced at trial.

Stephens provided no support in his postconviction motion or at the evidentiary hearing to show that, but for counsel's errors, he would have not pled guilty and would have insisted on going to trial.  He also fails to demonstrate that his guilty pleas were entered into without his permission, that counsel failed to discuss the consequences of his pleas or that he was forced to enter the guilty pleas.  Further, during the plea colloquy between Stephens and the trial court, Stephens stated that he authorized his counsel to enter the guilty pleas, he understood that by entering the pleas, he was waiving certain constitutional rights, he had enough time to discuss his case and decision to enter guilty pleas with his attorney, that no one was making him enter the guilty pleas, and that he was not under the influence of any drug, medication, substance, or condition that would affect his ability to think and understand the consequences of his decisions.   Stephens also does not demonstrate that there was any defense to the charges for which he pled guilty that was likely to succeed at trial.

Penalty phase counsel testified at the evidentiary hearing that he was present when lead counsel discussed the charges with Stephens.  He testified that lead counsel's strategy was to gain credibility with the jury and that this strategy worked because entering guilty pleas on certain charges resulted in an acquittal of some of the charges for which Stephens pled not guilty.[58]  During the penalty phase, counsel even stated during his closing arguments that the fact that Stephens pled guilty to a number of charges should be seen as mitigation.[59]  In fact, in

---

[58] See Vol. 7, Tab EE at 43-47.

[59] See Vol.2, Tab O at 755.

its sentencing order, the trial court found in mitigation that Stephens entered pleas to some counts of the indictment.[60]

Counsel is not deemed ineffective for using a strategy that benefitted Stephens.  See Nixon v. State, 932 So.2d 1009 (Fla. 2006).  Stephens fails to show that counsel was deficient under Strickland.  Accordingly, we affirm the trial court's denial of relief on this claim.[61]

Stephens' final claim is that the cumulative effect of the alleged errors requires that he receive a new trial.  However, because all of Stephens' individual claims are without merit, his cumulative error claim[62] must fail.  See Griffin v. State, 866 So.2d 1, 22 (Fla. 2003) ("[W]here individual claims of error alleged are either procedurally barred or without merit, the claim of cumulative error must fail."); see also Vining v. State, 827 So.2d 201, 219 (Fla. 2002).  We affirm the trial court's denial of relief based on the allegation of cumulative error.

Stephens v. State, 975 So.2d at 413-18 (footnote omitted).

Upon a thorough review of the record and the applicable law, this Court concludes that the state court's adjudication of these ineffectiveness claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to relief on these claims.

---

[60] See Vol. 1, Tab S at 16.

[61] The trial court found that Petitioner was not prejudiced by counsel's alleged errors.  See Vol. 6, Tab FF at 12-15.

[62] Petitioner does not raise a cumulative error claim in his Petition; however, he references such a claim in his Reply.  See Reply at 26-27.  Thus, this Court will assume Petitioner intended to raise his cumulative error claim in the Petition.

### D. Ground Four

Petitioner alleges that his defense attorney was operating under a conflict of interest.

Petition at 49-54; Petitioner's Memorandum at 40-44.  Petitioner raised this issue in his

amended 3.851 motion, and the circuit court denied relief.  See Vol. 6, Tab FF at 12.  Upon

Petitioner's appeal, the Florida Supreme Court adjudicated the claim as follows:

> Stephens contends that counsel was operating under a conflict of interest in two ways: (1) counsel's representation of a codefendant on the 1992 burglary conviction that the State was using as an aggravator, and (2) representation of Stephens and Cummings by one attorney.  In Hunter v. State, 817 So.2d 786 (Fla. 2002), we held that "[t]o demonstrate an actual conflict, the defendant must identify specific evidence in the record that suggests that his or her interests were compromised.  A possible, speculative or merely hypothetical conflict is 'insufficient to impugn a criminal conviction.'"  Id. at 792 (citation omitted) (quoting Cuyler v. Sullivan, 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)).

> Stephens first argues that counsel's representation of Stephens' codefendant, Sammie Washington, on the 1992 burglary conviction created a conflict of interest because it precluded counsel from calling Washington as a witness or taking a position adversarial to Washington in challenging the conviction.  The trial court found that there was no evidence that counsel's representation of Washington negatively affected or impacted Stephens' defense, and we agree.  Stephens does not point to any evidence that Washington's testimony would have been beneficial in rebutting the conviction.  Furthermore, counsel's reason for not calling Washington to testify was not the alleged conflict of interest, but because counsel made a strategic decision not to challenge the conviction.  Counsel testified at the evidentiary hearing that he decided not to focus on introducing evidence to possibly lessen the weight of the aggravator because he believed it could backfire.[63]  Counsel also testified that he did not even remember if he represented

---

[63] See Vol. 7, Tab EE, August 26, 2004 Evidentiary Hearing Transcript at 155.

Washington in the 1992 burglary case.  He further stated that if he had known that he represented Washington and had learned something from that representation, he would have used that information to assist Stephens.  However, during the investigation of the 1992 burglary conviction, counsel did not learn anything that would have assisted him in attacking the conviction.[64]

Stephens also alleges that because he was actually represented by the attorney for codefendant Cummings and because Cummings' and Stephens' defenses were antagonistic, his right to conflict-free counsel was violated.  The record demonstrates that Stephens and Cummings had individual attorneys.  Thus, Stephens fails to show that there was an actual conflict of interest.

Accordingly, the trial court properly denied relief on this claim.

Stephens v. State, 975 So.2d at 422-23.

Upon a thorough review of the record and the applicable law, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to relief on this claim.

## E. Ground Five

Petitioner asserts that he was denied the effective assistance of counsel for counsel's failure to pursue a motion requesting a jury interview or a new trial.  Petition at 56-58; Petitioner's Memorandum at 44-47.  Petitioner raised this issue in his amended 3.851

---

[64] See Vol. 7, Tab EE, August 26, 2004 Evidentiary Hearing Transcript at 62-63.

motion, and the circuit court denied relief.  <u>See</u> Vol. 6, Tab FF at 26.  Upon Petitioner's

appeal, the Florida Supreme Court adjudicated this claim as follows:

> Stephens alleges that counsel was ineffective for failing to pursue a motion requesting a jury interview.  Stephens cites to an interview given to the Florida Times-Union by jury foreperson Ronald Buck in which Mr. Buck stated the jury believed that Stephens did not intend to kill the victim, "[b]ut the child died as a result of the robbery . . . . That's why we convicted him."[65]  Stephens argues that this statement by Mr. Buck establishes that the reasons for the jury's recommendation of death were inconsistent with the jury's advisory sentences.  The trial court found that Mr. Buck's statement was not inconsistent with the jury's finding that Stephens played a significant role in the underlying felony and acted with reckless indifference to human life.  We agree.  Even though Mr. Buck did not specifically state that Stephens acted with reckless indifference to human life, his statement to the media indicates that Stephens did act with reckless disregard to human life.  In fact, when we addressed Stephens' proportionality claim on direct appeal, we found that "Stephens personally committed the crimes of burglary and robbery" and that Stephens "personally kidnapped the child victim."  <u>Stephens</u>, 787 So.2d at 760.  We also stated that "[t]he record demonstrates that Stephens was indifferent to the fate of this helpless child."  <u>Id</u>.

> Because Stephens fails to demonstrate deficient performance and prejudice under <u>Strickland</u>, we affirm the trial court's denial of relief on this claim.

<u>Stephens v. State</u>, 975 So.2d at 423.

Upon a thorough review of the record and the applicable law, this Court concludes

that the state court's adjudication of this ineffectiveness claim was not contrary to clearly

established federal law, did not involve an unreasonable application of clearly established

federal law, and was not based on an unreasonable determination of the facts in light of the

---

[65] <u>See</u> Vol. 1, Tab K at 365.

41

evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on this claim.

## F. Ground Six

Petitioner contends that the trial court committed fundamental error by instructing the jury regarding aggravating factors which did not apply and that defense counsel was ineffective for failing to object and for conceding these factors to the jury. Petition at 60-64; Petitioner's Memorandum at 47-52. Petitioner raised these issues in his amended 3.851 motion, and the circuit court denied relief. See Vol. 6, Tab FF at 29-30. Upon Petitioner's appeal, the Florida Supreme Court addressed these claims as follows:

> Stephens asserts that the trial court committed fundamental error by instructing the jury regarding the HAC aggravator and the pecuniary gain aggravator. Initially, we note that a substantive challenge to the HAC and pecuniary gain jury instructions is procedurally barred because Stephens could have raised these claims on direct appeal. Thompson v. State, 759 So.2d 650 (Fla. 2000). Additionally, the claim is without merit.

> Stephens first argues that the HAC aggravator did not apply because he lacked the requisite intent to kill and because the trial court did not find, beyond a reasonable doubt, that the murder was especially heinous, atrocious, or cruel. However, the HAC aggravator does not focus on the intent and motivation of the defendant, but instead on the "means and manner in which death is inflicted and the immediate circumstances surrounding the death." Brown v. State, 721 So.2d 274, 277 (Fla. 1998). The record demonstrates that there was competent, substantial evidence to support the HAC jury instruction. Dr. Floro testified that in his expert opinion, Little Rob died of asphyxiation, which can be either strangulation or suffocation. Stephens, 787 So.2d at 752. We have consistently upheld the HAC aggravator in cases where a conscious victim was

strangled.  See Bowles v. State, 804 So.2d 1173 (Fla. 2001);
see also Mansfield v. State, 758 So.2d 636 (Fla. 2000).[66]

Stephens also argues that the pecuniary gain aggravator
did not apply because pecuniary gain was not the primary
motive for the killing and because it was not proven beyond a
reasonable doubt.  Stephens is mistaken.  In order to establish
the pecuniary gain aggravator, the State "must prove beyond a
reasonable doubt that the murder was motivated, at least in part,
by a desire to obtain money, property, or other financial gain."
Finney v. State, 660 So.2d 674, 680 (Fla. 1995) (emphasis
added).  The record demonstrates that there was competent,
substantial evidence to support the pecuniary gain jury
instruction.  Stephens pled guilty to armed burglary of the
Sparrow home and three counts of robbery.  Stephens also
testified that when he entered the home, his intent was to rob
anyone in the house, and that, in fact, he did rob the people in
the house.  However, Stephens argues that because the
burglary of the Sparrow home and robbery of its occupants were
over by the time the murder was committed, pecuniary gain
could not be considered as an aggravator.  We rejected a similar
argument in Parker v. State, 873 So.2d 270 (Fla. 2004). We held
that the pecuniary gain aggravator is applicable where the
"murder was the culmination of a course of events that began
when appellant went into a store, robbed the clerk at gunpoint,
and abducted her from the store."  Id. at 290 (quoting Copeland
v. State, 457 So.2d 1012, 1019 (Fla. 1984)).  Little Rob's murder
in the instant case was the culmination of a course of events that
began when an armed Stephens entered the Sparrow home,
robbed the occupants, and kidnapped the child for the purpose
of trying to escape.

Because Stephens fails to demonstrate any fundamental
error, we affirm the trial court's denial of relief on this claim.

Stephens v. State, 975 So.2d at 423-24.

_____

[66] The jury's verdict in the guilt phase could have supported either a finding of
premeditated murder or felony murder.  Thus, at the penalty phase, the judge properly
instructed the jury on the HAC factor because there was evidence from which the jury could
have found that Petitioner strangled or suffocated the victim.

Respondents contend that insofar as Petitioner asserts that  the trial court committed fundamental error by instructing the jury regarding aggravating factors which did not apply, this claim is procedurally barred because the Florida Supreme Court found that this issue could have been raised on direct appeal.  See Response at 17-18.  This Court agrees.[67]

> For a state procedural ruling to preclude federal habeas review of [a petitioner's] claims, the state court's ruling must rest upon an "independent" and "adequate" state-law ground.  Cone v. Bell, --- U.S. ----, 129 S.Ct. 1769, 1780, 173 L.Ed.2d 701 (2009) (quoting Coleman v. Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)); Payne v. Allen, 539 F.3d 1297, 1313 (11th Cir. 2008), cert. denied, --- U.S. ----, 129 S.Ct. 2433, 174 L.Ed.2d 229 (2009); Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  "[W]hen a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review."  Cone, 129 S.Ct. at 1780; see Lee v. Kemna, 534 U.S. 362, 376, 381, 122 S.Ct. 877, 886, 888, 151 L.Ed.2d 820 (2002) (recognizing that it is only a "limited" or "small category of cases in which asserted state grounds are inadequate to block adjudication of a federal claim").

Maples v. Allen, 586 F.3d 879, 887 (11th Cir. 2009) (per curiam).

The Eleventh Circuit has found that a state court's determination that a claim is procedurally barred pursuant to Fla. R. Crim. P. 3.850 because it could have been raised before the trial court and, if properly preserved, on direct appeal, rests on an independent and adequate state ground that precludes federal habeas consideration of the claim.  See

---

[67] "That the court alternatively rejected Petitioner's claims on the merits does not disturb the procedural bar.  See Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994) ('[W]here a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim.')."  Thompson v. Sec'y, Dep't of Corr., 517 F.3d 1279, 1282 n.5 (11th Cir. 2008) (per curiam).

44

LeCroy v. Sec'y, Fla. Dep't of Corr., 421 F.3d 1237, 1260 (11th Cir. 2005).  Accordingly, Petitioner has procedurally defaulted his claim that the trial court committed fundamental error by instructing the jury regarding aggravating factors which did not apply.

"Procedural defaults in state courts will foreclose federal court review, absent a showing of cause and prejudice."[68] Parker v. Sec'y for the Dep't of Corr., 331 F.3d 764, 770 (11th Cir. 2003) (citing Wainwright v. Sykes, 433 U.S. 72 (1977)), cert. denied, 540 U.S. 1222 (2004).  "[A] federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice."  Fortenberry v. Haley, 297 F.3d 1213, 1222 (11th Cir. 2002) (per curiam) (citing Murray v. Carrier, 477 U.S. 478, 495-96 (1986)), cert. denied, 538 U.S. 947 (2003).  The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence."  Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), cert. denied, 535 U.S. 926 (2002).

---

[68] Petitioner argues that the ineffective assistance of counsel for "failure to timely present the issue in state court will constitute cause" for the default.  Reply at 31.  It is unclear whether Petitioner is asserting that trial counsel was ineffective for failing to adequately preserve this issue for appeal and/or whether appellate counsel was ineffective for failing to raise this issue on appeal.  However, this Court finds neither argument to be availing because the Florida Supreme Court found that the trial court properly instructed the jury on these two aggravating factors.  Thus, Petitioner was not prejudiced by such allegedly deficient performance.

Petitioner has not shown cause and prejudice, nor has he demonstrated that he meets the requirements for the fundamental miscarriage of justice exception. Thus, because this portion of ground six is procedurally barred, this Court will not address it.[69]

Insofar as Petitioner contends that defense counsel was ineffective for failing to object to the HAC and pecuniary gain instructions, Respondents contend, and this Court agrees, that Petitioner can show neither deficient performance nor prejudice since the Florida Supreme Court ultimately concluded that these instructions were properly given. See Response at 135-36. And, to the extent Petitioner contends that counsel was ineffective for conceding these factors to the jury, that claim has been addressed and rejected in the discussion of ground three. Thus, for all of the above-stated reasons, Petitioner is not entitled to relief on this claim.

### G. Ground Seven

Petitioner contends that his execution would constitute cruel and unusual punishment because he has brain damage and is mentally impaired. Petition at 65-68; Petitioner's Memorandum at 52-58. Petitioner raised this issue in his state court habeas petition, and the Florida Supreme Court adjudicated the claim as follows:

> Stephens contends that because he suffers from brain damage, mental impairment, and has a mental and emotional age of less than eighteen years, the application of the death

---

[69] Even assuming *arguendo* that this portion of ground six is not procedurally barred, Petitioner is not entitled to relief because the Florida Supreme Court's adjudication of this claim in the alternative on the merits was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

> penalty in his case is cruel and unusual punishment. Stephens makes a similar claim to that in <u>Hill v. State</u>, 921 So.2d 579, 584 (Fla. 2006), where Clarence Hill argued that "his mental and emotional age places him in a category of persons for whom it is unconstitutional to impose the death penalty under <u>Roper v. Simmons</u>, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005)." This Court found that the claim was without merit and that <u>Roper</u> did not apply to Hill because Hill was twenty-three years old when he committed the crimes. The Court emphasized that <u>Roper</u> only prohibits the execution of defendants whose chronological age is below eighteen. Similar to Hill, Stephens' chronological age at the time he committed the crimes in this case was twenty-three, thus <u>Roper</u> does not apply to him. Habeas relief is denied on this claim.

<u>Stephens v. State</u>, 975 So.2d at 427.

Upon a thorough review of the record and the applicable law, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on this claim.[70]

### H. Ground Eight

Petitioner contends that the trial court violated his constitutional rights by finding the "in the course of a felony" aggravating factor because it constitutes an automatic aggravating factor in a case involving felony-murder, and appellate counsel was ineffective for failing to

---

[70] Petitioner relies upon the testimony of Dr. Toomer at the 3.851 hearing to support his claim that he has brain damage and is mentally impaired. However, while Dr. Toomer mentions these issues, his testimony does not necessarily establish that Petitioner has brain damage, nor does it establish that he suffers from any major mental defect or deficiency. His most specific diagnosis was "borderline personality disorder." <u>See</u> Vol. 7, Tab EE, Transcript of the August 25, 2004 Evidentiary Hearing Transcript at 20-110.

raise this issue on direct appeal.  Petition at 69-71; Petitioner's Memorandum at 58-61.

Petitioner raised this issue in his state court habeas petition, and the Florida Supreme Court

adjudicated the claim as follows:

> Stephens argues that the aggravating circumstance that
> the murder was committed in the course of committing a felony
> is unconstitutional because it constitutes an automatic
> aggravator and does not narrow the class of persons eligible for
> the death penalty.  This claim is without merit.  We have
> repeatedly found the murder "in the course of a felony"
> aggravator to be constitutional.  Ault v. State, 866 So.2d 674
> (Fla. 2003); Hitchcock v. State, 755 So.2d 638 (Fla. 2000);
> Blanco v. State, 706 So.2d 7 (Fla. 1997).  We have also rejected
> constitutional challenges to the murder "in the course of a
> felony" aggravator based on equal protection, due process, and
> cruel and unusual punishment.  Ault, 866 So.2d at 686 (citing
> Clark v. State, 443 So.2d 973, 978 (Fla. 1983); Menendez v.
> State, 419 So.2d 312, 314-15 (Fla. 1982)).
>
> Stephens also contends that the trial court erred in
> instructing the jury that the aggravating circumstance of murder
> "in the course of a felony" was sufficient by itself to justify a
> death sentence in a felony murder case.  However, the record
> demonstrates that Stephens is mistaken.  After reading the five
> possible aggravating circumstances to the jury, the trial court
> properly instructed the jury, in accord with the standard jury
> instructions, that "proof of one or more aggravating
> circumstances does not by itself dictate a death
> recommendation even in the absence of mitigation evidence."
>
> Because this claim is without merit, appellate counsel
> cannot be deemed ineffective for failing to raise the claim.  See
> Rutherford, 774 So.2d at 643.  Habeas relief is denied on this
> claim.

Stephens v. State, 975 So.2d at 425-26.  Upon a thorough review of the record and the

applicable law, this Court concludes that the state court's adjudication of these claims was

not contrary to clearly established federal law, did not involve an unreasonable application

of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Additionally, the Eleventh Circuit "has considered this [automatic finding of the felony-murder aggravating factor] argument previously and found it to be meritless.  See Johnson v. Dugger, 932 F.2d 1360, 1368-70 (11th Cir.), cert. denied, 502 U.S. 961, 112 S.Ct. 427, 116 L.Ed.2d 446 (1991); Bertolotti v. Dugger, 883 F.2d 1503, 1527-28 (11th Cir. 1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3296, 111 L.Ed.2d 804 (1990)." Mills v. Singletary, 161 F.3d 1273, 1287 (11th Cir. 1998) (per curiam); see also Lowenfield v. Phelps, 484 U.S. 231 (1988) (finding that a death sentence could be imposed for first-degree murder even though the sole aggravating circumstance found by the jury at the sentencing phase, that defendant knowingly created a risk of death or great bodily harm to more than one person, was identical to an element of the capital crime of which defendant was convicted).  Accordingly, Petitioner is not entitled to relief on the basis of these claims.

### I. Ground Nine

Petitioner contends that the trial court committed fundamental error by instructing the jury regarding the HAC aggravating factor, and appellate counsel was ineffective for failing to raise this issue on direct appeal.  Petition at 72-74; Petitioner's Memorandum at 62-64. Petitioner raised this issue in his state court habeas petition, and the Florida Supreme Court adjudicated the claim as follows:

> Stephens contends that the trial court committed fundamental error by instructing the jury on the HAC aggravator when this aggravator did not apply.  Stephens also argues that appellate counsel was ineffective for not raising this claim on direct appeal. As we said in Stephens' postconviction claim, the

> trial court did not commit any error in instructing the jury on this aggravator because the aggravator was supported by competent, substantial evidence adduced at trial. Had appellate counsel raised this claim on direct appeal, the claim would have in all probability been found to be without merit. Stephens is not entitled to habeas relief on this claim.

Stephens v. State, 975 So.2d at 425.

Upon a thorough review of the record and the applicable law, this Court concludes that the state court's adjudication of these claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on these claims.

## J. Ground Ten

Petitioner contends that the trial court committed fundamental error by instructing the jury regarding the pecuniary gain aggravating factor, and appellate counsel was ineffective for failing to raise this issue on direct appeal. Petition at 75-78; Petitioner's Memorandum at 65-68. Petitioner raised this issue in his state court habeas petition, and the Florida Supreme Court adjudicated the claim as follows:

> Stephens contends that the trial court committed fundamental error by instructing the jury on the pecuniary gain aggravator when this aggravator did not apply. Stephens also argues that appellate counsel was ineffective for not raising this claim on direct appeal. As we said in Stephens' postconviction claim, the trial court did not commit any error in instructing the jury on this aggravator because the aggravator was supported by competent, substantial evidence adduced at trial. Had appellate counsel raised this claim on direct appeal, the claim would have in all probability been found to be without merit.

50

> Accordingly, Stephens is not entitled to habeas relief on this
> claim.

Stephens v. State, 975 So.2d at 425.

Upon a thorough review of the record and the applicable law, this Court concludes that the state court's adjudication of these claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to relief on these claims.

## VII. Conclusion

This is a close death penalty case, as evidenced by the 4-3 decision of the Florida Supreme Court on the direct appeal.  The imposition of the death penalty was not based upon a finding that Petitioner intended to murder the child victim.  Instead, it was predicated upon a finding that he played a major role in the underlying felony and acted with reckless indifference to the child's life.  Under the highly deferential standard for federal habeas review of state court adjudications, see 28 U.S.C. § 2254(d), this Court concludes that the Florida Supreme Court's adjudication of this Tison/Enmund issue was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Additionally, this Court has serious misgivings about Petitioner's counsel's failure to attend depositions, failure to advocate more thoroughly on his client's behalf and his advising

51

Petitioner to plead guilty to the kidnapping that was the underlying felony under the felony-murder theory.  Counsel representing a defendant in a capital case owe their client  and our system of justice better.   However, this Court must evaluate Petitioner's ineffective assistance of counsel claims "[u]nder the doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." Knowles, 129 S.Ct. at 1420.  Here, the state circuit court thoroughly addressed and rejected Petitioner's ineffectiveness claims after conducting an evidentiary hearing.  Thereafter, the Florida Supreme Court reviewed in detail the same ineffectiveness issues and found that Petitioner is not entitled to post-conviction relief.[71]  This Court has now independently reviewed the substantial record and the applicable law and concludes that Petitioner is not entitled to federal habeas relief because the Florida Supreme Court's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

The remainder of Petitioner's claims are less concerning, and the state courts' adjudications of these claims are entitled to deference under AEDPA.  Accordingly, for the above-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

---

[71] Unlike the split decision on direct appeal, the Florida Supreme Court's decision denying post-conviction relief was unanimous.

### VIII. Certificate of Appealability

This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.

Upon consideration of the record as a whole, this Court will grant a certificate of appealability with respect to ground one (applicability of the death penalty under Tison/Edmund) and ground two (ineffective assistance of counsel at the guilt phase); however, the Court will deny a certificate of appealability with respect to the remaining grounds.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Petitioner appeals the denial of the Petition, the Court grants a certificate of appealability with respect to grounds one and two; however, the Court denies a certificate of appealability with respect to the remaining grounds.

4.      The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida this 17th day of March, 2011.

TIMOTHY J. CORRIGAN
United States District Judge

ps 9/13
c:
Counsel of Record

54